UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAMELA NORA STODDARD,

                        Plaintiff,          12-CV-0607(MAT)

           v.                               **DECISION**
                                            **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                        Defendant.
_____

## INTRODUCTION

Plaintiff Pamela Stoddard ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##5, 10.

## BACKGROUND

On October 27, 2009, Plaintiff filed a DIB application alleging disability beginning January 29, 2009 on the basis of a lower back condition, left ankle sprain, depression, and anxiety. T. 94-98, 176-77. Her application was initially denied, and a video

_____

[1]

Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

hearing before Administrative Law Judge ("ALJ") Scott Staller followed on March 14, 2011. During the hearing the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from a vocational expert. T. 87-105.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in substantial gainful activity from January 29, 2009, through her date last insured; (2) she had the severe impairments of degenerative disc disease of the lumbar spine, left lateral ankle sprain, diabetes, and hypertension; (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpart P, Appx. 1, and that she retained the residual functional capacity ("RFC") to occasionally climb, balance, stoop, kneel, crouch or crawl; understand, remember, and carry out simple instructions; make judgments on simple work-related decision; interact appropriately with supervisors and coworkers in a routine work setting; respond to usual situations and changes in a routine work setting; maintain attention and concentration for two-hour segments in an eight-hour period; and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms; (4) Plaintiff had no past relevant work; and (5) there was other

work that existed in significant numbers in the national economy that Plaintiff could perform. T. 17-22.

An unfavorable decision was issued on March 23, 2011. T. 12-16. The ALJ's determination that Plaintiff was not disabled became the final decision of the Commissioner when the Appeals Council denied her request for review on May 2, 2012. T. 1-6. This timely action followed. Dkt. #1.

Plaintiff now moves for judgment on the pleadings on the grounds that: (1) the ALJ erred in finding her mental impairments and morbid obesity non-severe; (3) the RFC finding was not supported by substantial evidence; (4) the ALJ's credibility evaluation was not supported by substantial evidence; and (5) the vocational expert testimony cannot provide substantial evidence to support the denial of benefits. Pl. Mem. (Dkt.#5-1) 1-24.

The Commissioner has filed a cross-motion arguing that the ALJ's decision must be affirmed because it was supported by substantial evidence and was based on the application of correct legal standards. Comm'r Mem. (Dkt.#10-1) 2-24.

For the following reasons, the Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

## **DISCUSSION**

## I.  **General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see

also <u>Mongeur</u>, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case <u>de novo</u>).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

## II.  **Medical Evidence**

### A.  **Physical**

Plaintiff was treated by Dr. David Pfalzer for hypertension, diabetes, and depression from January to August, 2009. T. 260-63. She was diagnosed with diabetes mellitus with suboptimal control; insomnia and depression; hypertension with tolerable control; and morbid obesity. Plaintiff was encouraged to exercise and lose weight. T. 260, 262, 263. On March 5, 2009 Plaintiff had good range of motion in her back and normal neurological examination results. T. 262.

In August, 2009, Plaintiff tripped over a car barrier and caught her left leg, resulting in pain in her left knee and calf which worsened over time. T. 249. She told Dr. Naren Kansal that the pain was the worst at night when she was sleeping and when she

was lying down. Id. Dr. Kansal noted that Plaintiff's medical history included diabetes, heart problems, high blood pressure, depression, and anxiety. Id. Her medications were OxyContin, Diovan, pravastatin, Effexor, trazodone, atenolol, Janumet, aspirin, and Lantus insulin. Id. Upon examination, Plaintiff showed that her spine was non-tender with no paraspinal spasm, "okay" sacroiliac joints, negative lower extremity examination with "perhaps . . . some weakness of the left extensor hallucis longus and . . . mild weakness of the dorixflexion of the foot." Reflexes were all present and equal bilaterally including the ankles, and straight leg raising was positive. T. 250. Plaintiff was assessed with clinically acute left lumbar radiculopathy with possible footdrop. Id.

In October, 2009, Plaintiff saw Patricia Champlin, ANP-C, upon complaints of low back pain and left leg pain. T. 258. She had good range of motion lumbar flexiohn, extension, and side flexion, negative straight leg raise bilateral, and left weakness of the quadricep. Id. She was unable to tip toe or heel walk, and used a cane. Id. Ms. Champlin assessed Plaintiff with "left leg radicular symptoms; weakness left quad, great left toe plantar flexion, dorisflexion." Id.

On October 24, 2009, Plaintiff underwent a magnetic resonance imaging of the lumbar spine, which revealed unilateral right L5 spondylosis defect; prominent left-sided facet arthropathy and severe left foraminal compromise from combined encroachment by the

facet arthropathy and spur with resultant distortion of the exiting nerve root; L4-5 facet prominence and impression on the ventral sac by a broad protrusion that reduces its caliber to lower limits of normal; and mild L3-4 central stenosis from retrolisthesis and impression on the ventral sac by a disk bulge and moderate left foraminal narrowing from encroachment by a mid and far lateral disk protrusion. T. 253-54.

An x-ray of Plaintiff's lumbosacral spine taken on October 26, 2009 showed an 8mm anterolisthesis of L5 upon S1 due to bilateral spondylolyses, degenerative disc changes at level, but no evidence for instability, and mild degenerative changes affecting predominately the facet joints. T. 213, 255.

Plaintiff had decompressive lumbar laminectomy L5-S1 with left foraminotomy and post residual fusion L5-S1 on November 4, 2009. Following her surgery Plaintiff reported that her back pain was "much improved," but still had occasional numbness in her left leg and foot.  T. 256. She also reported to Dr. Kansal on January 6, 2010, that she was fired from work but did not feel depressed overall. Id.

Electromyography nerve conduction studies conducted in January of 2010 revealed left L5 and S1 radiculopathies representing possible residual denervation. T. 237-38. On January 25, 2010, Dr. Kansal noted that Plaintiff was doing "quite well" but "need[ed] to work toward losing a lot of weight." T. 244.

In September, 2010, Plaintiff's hypertension and diabetes were under control and she was encouraged to be more physically active. T. 286. She was to see a psychiatrist for anxiety, depression, and agoraphobia. Id.

Christopher Ritter, M.D., evaluated Plaintiff on December 7, 2010 for left ankle problems. T. 303-04. Her physical examination results were unremarkable and she was assessed with ankle instability that would benefit from a brace or physical therapy. T. 304.

Dr. Pfalzer's treatment notes from February 28, 2011, indicated that Plaintiff's hypertension and diabetes were under control, she was not exercising or dieting in an organized fashion, and was to continue seeing a psychiatrist for her depression. T. 306.

**B.   Psychiatric**

A Psychiatric Review Technique completed on December 11, 2009, indicated that there was insufficient evidence to assess Plaintiff's psychiatric limitations prior to her date last insured. T. 223-35.

Plaintiff was referred to Dr. Naureen Jaffri for a psychiatric assessment in November, 2010, for depression. She reported a history of depression dating back 30 years, but in the past three years her symptoms became worse, including avoidance of people, sweating, dizziness, lightheadedness, and difficulty concentrating. T. 292. A mental status examination revealed fair hygiene and

8

grooming, and orientation to person, place, situation, and purpose. She appeared "somewhat nervous" during the interview. Plaintiff reported irritability, disrupted sleep, lack of enjoyment, and anger, among other things. T. 293. She was diagnosed with major depressive disorder, recurrent, moderate, rule out bipolar, and panic disorder with agoraphobia. T. 293-94. Dr. Jaffri prescribed Cymbalta, Ativan, and continuation of trazodone. Id.

In January, 2011, Plaintiff reported that she was compliant with her medications with no side effects, had partial relief with depression and anxiety, and had no physical complaints. T. 291. She reported struggling with crowds, but was alert, oriented, and in touch with reality, had adequate judgment and insight, with no psychosis. Id. Dr. Jaffri assessed partial relief with treatment. Id.

Dr. Jaffri completed a Mental Residual Functional Capacity Questionnaire on March 8, 2011. T. 308-13. Clinical findings included fear of leaving the home, avoidance of others due to anxiety and depression, and panic. T. 308. Dr. Jaffri opined that Plaintiff had serious limitations in remembering work-like procedures; understanding, remembering, and carrying out very short and simple instructions; maintaining attention for two hours; and making simple work-related decisions. T. 310. She was unable to maintain regular attendance and punctuality; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace; respond appropriately

to changes in a routine work setting; and deal with normal stress. Id. Finally, Dr. Jaffri opined that Plaintiff had "no useful ability to function" in the areas of working in coordination with or proximity to others without being unduly distracted; getting along with co-workers or peers; and accepting instructions and criticism from supervisors. Id.

## III. **Testimonial and Vocational Evidence**

Plaintiff was 50-years old on the alleged onset date of January 29, 2009 and had an 11th grade education. T. 24, 106, 176. She had no past relevant work experience. T. 92, 162.

Plaintiff completed a daily activities questionnaire following her back surgery, which indicated that she lived with her husband, took care of her two cats, took care of her personal hygiene and grooming needs with assistance from her husband, prepared simple meals, drove a car, grocery shopped, played computer games, watched television, and socialized. T. 182-89, 251-52.

Plaintiff testified at her disability hearing that she quit her last job in January, 2009, due to a disagreement with her boss. T. 93. She testified that she had constant lower back pain that radiated to her left leg, walked with a cane, and wore an ankle brace. T. 94, 97-98. She stated that her diabetes and hypertension were controlled by medication. T. 94. Plaintiff told the ALJ that her depression and anxiety caused her to want to isolate herself. T. 95.

The ALJ also heard testimony from vocational expert James Newtown, to whom he posed a hypothetical regarding an individual whose age, educational background, and work experience were the same as Plaintiff's, who could perform light work that required no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; and that could understand, remember, and carry out simple instructions and judgments; make simple work-related decision; interact appropriately with supervisors and co-workers in a routine work setting; respond to usual work situations and changes in a routine work setting; maintain attention and concentration for two-hour segments in an eight-hour period; and complete a normal work week without excessive interruptions from psychologically-based symptoms. T. 102. Mr. Newtown opined that such an individual could perform the occupations of office helper, ticket seller, and parking lot attendant, as examples of unskilled, light occupations that exist in significant numbers in the national economy. T. 103.

## IV.  The Decision of the Commissioner that Plaintiff was not entitled to DIB was supported by Substantial Evidence.

### A.  Severity Finding

Plaintiff contends that the ALJ erred when he determined that Plaintiff's anxiety, depression, and obesity were non-severe impairments that did not significantly limit her physical or mental ability to do basic work activities. Pl. Mem. 10-15.

The Step two severity inquiry serves only to "screen out de minimis claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' ... [with] ... 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

Here, the ALJ applied the "special technique" to determine whether Plaintiff's mental impairments were severe. In doing so, he found Plaintiff had a mild limitation in activities of daily living. She was married, lived with her husband and took care of her pets, prepared easy meals, could dress herself, and was able to drive short distances. T. 17-18. In social functioning, the ALJ found a mild limitation: she did not like crowds and preferred to spend time at home. She could grocery shop when the stores were not crowded. T. 18. He found that Plaintiff had no limitation in concentration, persistence, or pace, based her hobbies and denial of problems relating to concentration or memory. Id. Plaintiff had no episodes of decompensation. Id.

A State Agency psychological consultant found no evidence that Plaintiff's depression and anxiety significantly limited her ability to perform basic work activities. T. 223, 225.

Although Dr. Jaffri's Mental RFC questionnaire indicated significant limitations in most functional areas, the opinion,

12

dated March 8, 2011, was based upon treatment post-dating the insured period by thirteen months. There was therefore no retrospective opinion issued by Dr. Jaffri. See Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989)(claimant presented no evidence concerning relevant period and evidence of disability before and after relevant period did not establish disability during that period).

Moreover, the ALJ found that Plaintiff's lower back condition, left lateral ankle sprain, diabetes, and hypertension were severe impairments, and then considered her anxiety, depression, and obesity in combination with her severe impairments throughout the remainder of the sequential evaluation. See 20 C.F.R. §§ 404.1523 (providing that the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity). Accordingly, any purported error in the severity analysis at step two would be harmless. See Tryon v. Astrue, No. 10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb.7, 2012) (citing Kemp v. Comm'r, No. 10-CV1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).

Finally, the Court rejects Plaintiff's argument that the ALJ "should have at a minimum acknowledged Stoddard's obesity and the effects it has on her depression and musculoskeletal complaints." Pl. Mem. 13. In his decision, the ALJ acknowledged that Plaintiff's body mass index was considered Class II obesity, and noted that the exertional level (light) and postural limitations (climbing,

bending, stooping) that made up the RFC finding sufficiently accommodated the limitation from her obesity. T. 21.[2] The ALJ therefore properly applied Social Security Ruling ("SSR") 02-1p, which required him to consider whether obesity, in combination with other impairments, prevented Plaintiff from working. See SSR 02-1p, 2002 WL 3468281, at *1; see also Butcher v. Colvin, No. 12-cv-1662, 2014 WL 295776, at *6 (N.D.N.Y. Jan. 27, 2014) ("while obesity is not in and of itself a disability, it is a medically determinable impairment under the regulations, which the ALJ should consider when assessing an individual's RFC").

In reaching his step two finding, the ALJ applied the correct legal principles and his determination was supported by substantial evidence in the record.

### B.   Residual Functional Capacity

Plaintiff next contends that the ALJ erred in finding her capable of light when he formulated her RFC. Pl. Mem. 15-21.

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain

---

[2]

 Even if the ALJ had failed to mention Plaintiff's obesity, such an omission would not constitute reversible error per se. Younes v. Colvin, No. 14-CV-170, 2015 WL 1524417, at *4 N.D.N.Y. Apr. 2, 2015).

and other limitations which could interfere with work activities on a regular and continuing basis." Pardee v. Astrue, 631 F.Supp.2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." Stanton v. Astrue, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), aff'd, 380 Fed. Appx. 231 (2d Cir. 2010).

Prior to the fourth step of the sequential evaluation, the ALJ determined that Plaintiff retained the RFC to perform light, unskilled work which required no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. T. 18-19. In reaching this determination, the ALJ considered Plaintiff's degenerative disc disease, and noted that the medical records, as well as Plaintiff's own assertions, indicated that her back pain significantly improved after her back surgery. T. 19-20. He then considered her diabetes and hypertension, both of which were under control with medication. T. 20. Plaintiff's left ankle sprain was determined to be not as limiting as alleged, based on her refusal to attend physical therapy and her inconsistent reports of pain relating to that injury. Id. As previously stated, the ALJ took note of Plaintiff's obesity and factored that into the RFC finding as well. T. 21.

15

Here, the ALJ fully considered the entire record and addressed the objective medical tests, Plaintiff's subjective complaints, treatment notes from her providers, and the opinion evidence. He therefore applied the appropriate legal standard in reaching his conclusion that Plaintiff was capable of light work with certain limitations. Additionally, the ALJ correctly summarized the medical evidence, which almost uniformly supported mild physical limitations. T. 19-21. The resulting RFC considered Plaintiff's impairments, and accommodated the limitations resulting therefrom. This determination was therefore supported by substantial evidence in the record.

Under these circumstances, remand is not warranted simply because the ALJ did not provide a function-by-function analysis relating to any stand/walk/sit limitations. Cichocki v. Astrue, 729 F.3d 172, 177-78 (2d Cir. 2013).

Plaintiff also challenges the ALJ's mental RFC finding on the basis that he "did not apply the rules of evaluation for treating physician opinions." Pl. Mem. 20. This point warrants little discussion, as the ALJ specifically enumerated the factors set forth in 20 C.F.R. § 404.1527(c)(1)-(5) and 20 C.F.R. § 416.927(c)(1)-(5), which instruct the ALJ on how to evaluate opinion evidence.[3] The ALJ explained that he accorded little weight

---

[3] Paragraph (d)(2) of 20 C.F.R. 404.1527 and 416.927 were renumbered as paragraph (c)(2) in a revision effective February 23, 2012. 77 Fed.Reg. 10651, at 10656, 10657.

to Dr. Jaffi's answers to the Mental Residual Functional Capacity Questionnaire because the form was incomplete with regard to Plaintiff's frequency and length of contact with Dr. Jaffri, there was not enough substantive evidence in the record to support the restrictive opinion of Plaintiff's limitations during the insured period, and the medical records that did discuss Plaintiff's depression and anxiety during the insured period were "sparse" and did not indicate significant problems related to her mental impairments. T. 21.

The ALJ therefore applied the appropriate standards in evaluating the opinion, and provided the requisite "good reasons" set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) for discounting the opinion of Plaintiff's treating psychiatrist.

### C. Plaintiff's Credibility

Plaintiff alleges that the ALJ did not apply the appropriate standards set forth in SSR 96-7p and 20 C.F.R. § 404.1529 in assessing Plaintiff's credibility. Pl. Mem. 21-24.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability

exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); <u>see</u> SSR 96-7p, (July 2, 1996), 1996 WL 374186, at *7. It is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. <u>Mimms v. Sec'y</u>, 750 F.2d 180, 186 (2d Cir. 1984); <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

"If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." <u>Brandon v. Bowen</u>, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citing, <u>inter alia</u>, <u>Valente v. Sec'y</u>, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

Here, the ALJ summarized the evidence relating to each of Plaintiff's purported impairments, and stated that the objective

medical findings did not support the severity of her limitations as alleged. He dedicated five paragraphs to discussing the treatment notes and diagnostic imaging tests, contrasting them with Plaintiff's subjective complaints of pain. He concluded that her characterization of her symptoms was not substantiated by the objective medical evidence. In doing so, he specifically cited and applied SSR 96-7p and 20 C.F.R. § 404.1529, and therefore Plaintiff's argument in this regard must fail.

The Court finds that the ALJ's credibility determination was proper as a matter of law and supported by substantial evidence in the record.

**D.   Vocational Expert Testimony**

Plaintiff concludes that "due to the errors above, the vocational expert testimony cannot provide substantial evidence to support the denial." Pl. Mem. 25.

The Court has rejected all of Plaintiff's previous arguments and finds that the ALJ's residual functional capacity finding was supported by substantial evidence. Having reached this determination, the Court finds no error in the ALJ's step five conclusion. See Wavercak v. Astrue, 420 Fed.Appx. 91, 95 (2d Cir. 2011) ("[b]ecause we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject [plaintiff's] vocational expert challenge").

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt.#5) is denied, and the Commissioner's cross-motion (Dkt.#10) is granted. The ALJ's finding that Plaintiff was not disabled during the insured period is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          May 18, 2015